**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-1391-WJM-MJW

HAROLD GENE HOLDERNESS

    Plaintiff,

v.

BIRNER DENTAL MANAGEMENT SERVICES INC., d/b/a PERFECT TEETH

    Defendant.

---

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Dr. Harold Gene Holderness ("Plaintiff") brings this action against his former employer, Defendant Birner Dental Management Services, Inc. d/b/a Perfect Teeth ("Defendant" or "Perfect Teeth"), alleging that he was terminated in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). (ECF No. 27.) Before the Court is Defendant's Motion for Summary Judgment ("Motion"). (ECF No. 35.) For the reasons set forth below, the Motion is denied.

### I. BACKGROUND

With respect to Defendant's motion for summary judgment, the Court views the facts in the light most favorable to Plaintiff, the nonmovant. Thus, reasonable inferences are drawn and factual ambiguities are resolved in his favor.

**A.    Plaintiff's Employment at Perfect Teeth**

Defendant is a publicly traded corporation that serves a network of dental offices

marketed under the name of Perfect Teeth.  Plaintiff is a dentist who worked for Defendant off and on from 2007 until his employment was terminated in 2011.

Plaintiff was originally hired to work part-time at Perfect Teeth's South Eighth Street office on April 23, 2007, when Plaintiff was 66 years old.  (ECF No. 33-2 at 1; Motion (ECF No. 33) at 3.)  Plaintiff was hired by Mark A. Birner, DDS ("Birner"), Defendant's president.  (*Id.*)  At the end of the three-month contract term, Plaintiff opted not to continue his employment at Perfect Teeth.  (ECF No. 33-5.)

Birner re-hired Plaintiff to work part-time at Perfect Teeth's Castle Rock office on October 10, 2007, when Plaintiff was 66 years old.  (ECF No. 33-6 at 1; Motion at 3.)  At the end of the three-month contract term, when Plaintiff was 67 years old, his contract was renewed for an additional twelve months.  (ECF No. 33-7 at 1; Motion at 3.)   At the end of that contract term, Plaintiff opted not to continue his employment at Perfect Teeth.  (ECF No. 33-8.)

Finally, on April 29, 2009, when Plaintiff was 68 years old, Birner hired Plaintiff to work full-time at Perfect Teeth's Parker office.  (ECF No. 33-9; Motion at 4.)

In approximately July or August 2010, Barbara Stober ("Stober"), Plaintiff's Regional Manager during his tenure at the Parker office, asked Plaintiff if he was "getting tired of working."  (Plaintiff Dep. (ECF Nos. 33-3 & 37-1) pp. 90:9-19; 91:9-92:10; 95:4-10.)  About two to three weeks later, Stober asked Plaintiff a second time if he was "tired of working."  (*Id.* pp. 90:9-91:17.)  When asked why she said this, Stober responded, "You just act like you're getting tired."  (*Id.* p. 93:17-21.)

During late October or early November 2010, Birner called Plaintiff and said, "Dr. Holderness, your numbers are down. I think you're getting complacent down there." (*Id.* pp. 86:4-22; 87:5-24.) Plaintiff interpreted Birner's comment to mean that Birner thought Plaintiff had lost interest and didn't care about the practice anymore. (*Id.* p. 88:6-22.)

Plaintiff turned 70 on November 7, 2010. On December 1, 2010, Birner sent a letter to Plaintiff giving him 90-days notice of termination. (ECF No. 33-15.) Plaintiff's employment with Perfect Teeth ended in March 2011. (Am. Compl. (ECF No. 27) ¶ 40.)

Under his full-time contract, Perfect Teeth provided Plaintiff a contractual salary guarantee of $9,000 a month. (ECF No. 33-9.) If Plaintiff exceeded $30,000 in adjusted net production for any given month, Plaintiff would receive a bonus above the $9,000 guarantee. (*Id.*; Birner Dep. (ECF Nos. 33-10 & 37-3) pp. 21:1-22:7.) If Plaintiff met $30,000 in production, the Parker office would break even. (Stober Dep. (ECF Nos. 33-11 & 37-4) pp. 25:14-26:8.) Exceeding $30,000 would generate a profit for the office. (*Id.*)

Each month, Perfect Teeth dentists were ranked based on their relative monthly adjusted net production. (ECF No. 33-13.) These rankings were provided to Plaintiff and the other dentists each month. (Birner Aff. (ECF No. 33-4) ¶ 11.) The rankings show that Plaintiff rarely exceeded $30,000 in adjusted net production. (ECF No. 33-13.) Plaintiff's ranking and adjusted net production improved, however, during his final two months at Perfect Teeth. (*Id.*)

The Perfect Teeth dentists also received monthly "Trend Reports" that tracked the relative performance of the offices.  (ECF No. 37-5.)  The Trend Reports show that the Parker office was typically not the lowest producing office in its region.  (*Id.*)  The Trend Reports also show that the Parker office's production levels improved during Plaintiff's final few months as the office's head dentist.  (*Id.* at 8, 10 & 12.)  The Parker office was the fourth most profitable office in the region in December 2011, the second most profitable office in January 2011, and the most profitable office in the region in February 2011.  (*Id.*)

On these facts, Plaintiff filed this action against Defendant on May 29, 2012.  (ECF No. 1-1.)  On March 6, 2013, Plaintiff filed an Amended Complaint alleging Defendant violated Section 623 of the ADEA by wrongfully discharging Plaintiff because of his age.  (Am. Compl. at 1.)

On April 15, 2013, Defendant filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.  (ECF No. 35.)  On May 10, 2013, Plaintiff filed his Opposition to Defendant's Motion (Response (ECF No. 37)), and Defendant filed its Reply Brief in Support of its Motion on May 25, 2013.  (ECF No. 44).

This motion is now ripe for resolution.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem*

*Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III. ANALYSIS

The ADEA provides a remedy for discrimination in private employment on the basis of age. *See* 29 U.S.C. § 623(a)(1). The Act requires employers "to evaluate [older] employees . . . on their merits and not their age." *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996). It does not, however, require employers to evaluate employees perfectly, fairly, or even rationally–employers are free to exercise their sound business judgment in personnel matters and may terminate at will employees for any reason, so long as such termination is not unlawful. *See Adamson v. Multi Cmty. Diversified Servs.*, 514 F.3d 1136, 1153 (10th Cir. 2008). To prevail on a wrongful discharge claim under the ADEA, Plaintiff must prove by a preponderance of

the evidence that his age was the "but-for" cause of Defendant's actions.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 167 (2009).

In this case, because Plaintiff has no direct evidence of discrimination, the familiar *McDonnell Douglas* framework governs.  *See Greene*, 98 F.3d at 557-58 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).  Under the *McDonnell Douglas* framework, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996).  If Plaintiff establishes a *prima facie* case, there is a presumption that his termination, and Defendant's actions leading up to it, were based on his age.  The burden then shifts to Defendant to rebut this presumption by articulating a facially legitimate, nondiscriminatory reason for its actions.  *Id.*  If Defendant does so, the presumption would "simply drop out of the picture" and the burden shifts back to the plaintiff who must offer evidence to show that age "was a determinative factor in the employment decision, or that the defendant's non-discriminatory reason was pretextual."  *Scavetta v. King Soopers, Inc.*, 2013 WL 316019, at *2 (D. Colo. Jan. 28, 2013).

**A.     *Prima Facie***

In order to establish a *prima facie* case of age discrimination, Plaintiff must show that he was: (1) within the protected class of individuals 40 or older; (2) performing

satisfactory work; (3) terminated from employment[1]; and (4) replaced by a younger person. *Adamson,* 514 F.3d at 1146.

There is no dispute that Plaintiff has satisfied elements (1), (3), and (4). Plaintiff was a member of a protected class, his position was terminated, and he was replaced by a younger dentist. (ECF No. 37-6 at 3.) As to element (2), however, Defendant argues that "Plaintiff cannot establish that he was performing satisfactory work . . . ." (Motion at 14.) Specifically, Defendant argues that Plaintiff's performance was unsatisfactory because Plaintiff fell below Perfect Teeth's alleged production expectations for primary, full-time dentists working at Perfect Teeth. (Motion at 14-15.)

The law is clear that an employee's evidence regarding a plaintiff's work performance "*should not be* considered when determining whether the employee has made a *prima facie* case of employment discrimination." *E.E.O.C. v. RadioShack Corp.*, 2012 WL 2298403, at *5 (D. Colo. June 18, 2012) (emphasis in original) (quoting *Ellison v. Sandia Nat'l Lab.*, 60 Fed. App'x 203, 205 (10th Cir. 2003)). "This is because Defendant's arguments go to the weight of the evidence of satisfactory performance, not Plaintiff's initial burden to produce such evidence." *Id.* (quoting *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1420 (10th Cir. 1991). The proper time for Defendant to raise the performance issue is in rebuttal of Plaintiff's *prima facie* showing. *Id.*

---

[1] Defendant argues that the third element is that a plaintiff "was discharged despite the adequacy of this work." (Motion at 13 (quoting *Greene*, 98 F.3d at 558)). However, binding Tenth Circuit case law states that the third element is only whether Plaintiff was "terminated from employment." *See Adamson,* 514 F.3d at 1146. The Court views the adequacy of Plaintiff's work as relevant to Defendant's burden of coming forward with a non-discriminatory basis for its employment decision rather than Plaintiff's prima facie case.

Instead, to satisfy his *prima facie* burden, Plaintiff need only "introduce some evidence of good performance." *Id.* "[A] plaintiff may make out a *prima facie* case of discrimination in a discharge case by introducing credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer . . . ." *Toth v. Gates Rubber Co.*, 216 F.3d 1088, at *6 (10th Cir. June 21, 2006) (Table) (internal citations omitted).

Plaintiff has submitted evidence showing that the Parker office consistently outperformed numerous other Perfect Teeth offices in its region. (ECF No. 37-5 pp. 1, 2, 3, 5, 6, 8, 10 & 12.) Additionally, Plaintiff testified at his deposition that he was told that the Parker office production numbers had improved since he became the head dentist. (Plaintiff Dep. pp. 119:14-120:3, 146:7-148:19; ECF No. 37-7.) Defendant does not dispute that Plaintiff's patient care and relationship with his staff were acceptable. (Birner Dep. pp. 38:23-39:2.) Therefore, the Court finds that Plaintiff has established a *prima facie* case of age discrimination.

**B.     Legitimate Nondiscriminatory Purpose**

In response to Plaintiff's *prima facie* case, Defendant states that Plaintiff's employment was terminated due to poor performance based on Plaintiff's failure to meet monthly production goals. (Motion at 14-15.)  Poor performance and/or failure to meet performance standards are legitimate, non-discriminatory bases for termination. *See e.g.*, *Argo v. Blue Cross and Blue Shield of Kan.*, 452 F.3d 1193, 1202-03 (10th Cir.

2006). Defendant has produced evidence showing that Plaintiff was required to produce over $30,000 in adjusted net revenue each month to remain employed as a full-time dentist on a long-term basis.[2] (Birner Aff. ¶¶ 8, 9; ECF No. 33-13.) Defendant has also produced evidence showing that Plaintiff's adjusted net production during the time he was employed at the Parker office averaged $20,894. (Birner Aff. ¶ 12.) Additionally, Plaintiff never ranked higher than 57 on a monthly ranking of Perfect Teeth dentists, based on the dentists' net production numbers. (Birner Aff. ¶¶ 11, 14; ECF No. 33-13.) Thus, the Court finds Defendant has successfully articulated a nondiscriminatory reason for Plaintiff's termination.

**C.    Pretext**

Since Defendant has satisfied its burden under *McDonnell Douglas*, Plaintiff "can avoid summary judgment only if he is able to show that a genuine dispute of material fact exists as to whether the defendant's articulated reasons are pretextual." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1165 (10th Cir. 2000) (internal citation omitted).

As set out below, the Court finds that there is sufficient evidence to create a factual dispute with respect to pretext.

    1.    <u>Factual Inconsistencies Regarding Plaintiff's Performance</u>

Plaintiff can meet his burden of showing pretext with "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

---

[2] The Court notes that Plaintiff argues that there was no requirement to exceed $30,000 a month in net revenue. (Response at 5.) This will be addressed in Section III.C.1 *infra*.

employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Argo*, 452 F.3d at 1203 (internal citation omitted).

There are inconsistencies in Defendant's reasoning regarding how Plaintiff's performance was evaluated, and thus the reason for his termination. As discussed above, Defendant now contends that Plaintiff was fired for failing to meet performance goals. (Motion at 14.) However, Defendant originally stated that the "[r]elative financial performance of Plaintiff's office was not the basis of any personnel decision involving Plaintiff." (ECF No. 37-9 at 17.) Birner later testified that both a dentist's productivity, and the office's profitability matter. (Birner Dep. pp. 80:4-82:10.) Thus, Defendant's basis for terminating Plaintiff has been inconsistent.

Moreover, nothing in Plaintiff's contract requires Plaintiff to exceed $30,000 a month in net revenue. (ECF No. 33-9.) The employment contract also does not state that Plaintiff would be fired for failing to meet this goal. (*Id.*) Therefore, a reasonable juror could question whether such requirements actually existed.

Finally, the evidence shows that the Parker office was not the lowest performing Perfect Teeth office in its region. (ECF No. 37-5.) Evidence also shows that the Parker office had begun improving its production numbers during Plaintiff's last few months at Perfect Teeth. (ECF No. 37-5 at 8, 10 & 12.) The Parker office was the fourth most profitable office in the region in December 2011, the month Plaintiff received his 90-day termination letter, the second most profitable office in January 2011, and the most

profitable office in the region in February 2011, Plaintiff's last full month at Perfect Teeth.  (*Id.*)  This evidence calls into question Defendant's contention that Plaintiff was underperforming.

Thus, Plaintiff has produced evidence showing that Defendant has shifted its basis for termination, and that the truthfulness of Defendant's proffered basis for termination is questionable.  Both of these issues weigh in Plaintiff's favor on the pretext inquiry.

### 2. Similarly Situated Dentists Treated Differently

Birner affirmed that "[a]ny full-time dentist in [Plaintiff's] region who consistently ranked at or below [Plaintiff's] level was terminated – regardless of age." (Birner Aff. ¶ 15.)  However, evidence in the record shows that similarly situated dentists who were younger than Plaintiff were not terminated when they failed produce over $30,000 a month in net revenue.  (ECF No. 37-6 at 4.)  "[A]t the summary judgment stage, the plaintiff need only *produce* evidence that similarly situated employees were treated differently." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (emphasis in original).  "[S]imilarly situation employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Id.*

Evidence shows that two similarly-situated dentists, a Dr. Halligan, who was 40 years old, and a Dr. Guerra, who was 49, were not terminated for failing to produce $30,000 a month in net revenue.  (ECF No. 37-6 at 4.)  Despite the fact that Dr. Guerra

only produced an average of $27,970 per month, she was not terminated because her office was profitable and she had a good relationship with her patients. (Birner Dep. pp. 79:23-81:5.)

Like Dr. Guerra, there was no issue with Plaintiff's patient care or his relationship with his staff. (Birner Dep. pp. 38:23-39:2.) Additionally, during Plaintiff's final months at Perfect Teeth, the Parker Office outperformed Dr. Guerra's office. (ECF No. 37-5 at 8, 10 & 12.) The established evidence that neither Dr. Halligan nor Dr. Guerra were discharged for failing to produce at least $30,000 a month in net revenue raises a factual question regarding whether Defendant's proffered reasons for terminating Plaintiff are pretextual.

### 3.   Ageist Comments

Plaintiff also points to discriminatory comments made by Stober and Birner. "Age-related comments referring directly to the plaintiff can support an inference of age discrimination . . . ." *Stone*, 210 F.3d at 1140 (10th Cir. 2000). "A plaintiff must demonstrate a nexus exists between the allegedly discriminatory statement and the company's termination decision, and therefore that age actually played a role in the defendant's decisionmaking process and had a determinative influence on the outcome." *Id.* (internal citations omitted).

A month before Plaintiff's termination, Birner called Plaintiff and stated, "Dr. Holderness, your numbers are down. I think you're getting complacent down there." (Plaintiff Dep. pp. 86:4-22; 87:5-24.) More significantly, on two separate occasions,

12

Stober asked Defendant if he was "getting tired of working[.]" (*Id.* pp.90:9-94:1.) When asked why she said this, Stober responded, "You just act like you're getting tired." (*Id.* p. 93:17-21.) Stober's comments were made four or five months before Plaintiff was given his notice of termination. (*Id.* pp. 90:9-91:8.)[3]

Significantly, Stober's comments were not "stray remarks" because they were directed towards Plaintiff and made by an individual involved in determining Plaintiff's employment status. *See Bittel v. Pfizer, Inc.*, 307 F. App'x 132, 140 (10th Cir. 2009) (citing *Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1479 (10th Cir. 1996)) (finding a sufficient nexus where the comments "were directed to the plaintiffs individually," by a person involved in determining plaintiff's employment status). Although it was Birner, not Stober, who ultimately decided to terminate Plaintiff, (Stober Dep. pp. 47:22-48:3), evidence shows that Stober may have played a role in Plaintiff's termination, (Birner Dep. pp. 36:17-37:4). Thus, a reasonable juror could view the comments made by Stober and Birner as evidence of age discrimination.

4. <u>Same Actor Inference</u>

Defendant argues that since the same person hired and fired Plaintiff, it is entitled to the benefit of the "same actor" inference, which applies "[i]n cases where the employee was hired and fired by the same person within a relatively short time . . . ." *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006). In such

---

[3] Although Stober testified at her deposition that she does not remember making those comments, (Stober Dep. p. 64:17-21), the Court views the facts in the light most favorable to Plaintiff, and therefore presumes that the comments were made.

cases, "there is a strong inference that the employer's stated reason for acting against the employee is not pretextual." *Id.* This inference is limited because "the plaintiff still has the opportunity to present countervailing evidence of pretext . . . ." *Id.* Here, even assuming that the inference applies, given all the above, a reasonable juror could find that Plaintiff's evidence dispels whatever inference arises from the fact that Birner both hired and fired Plaintiff in less than a two year span.

## IV.  CONCLUSION

While none of these categories of pretext, standing alone, would be sufficient to meet Plaintiff's burden, considering the record as a whole, the Court finds that a reasonable juror could find that age was a determinative factor in Plaintiff's termination and, therefore, summary judgment is not appropriate. Accordingly, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 35) is DENIED; and

2. The Final Trial Preparation Conference remains set for April 22, 2014, with a four-day jury trial to begin on May 12, 2014.

Dated this 17th day of December, 2013.

BY THE COURT:

_____

William J. Martínez
United States District Judge